J. M. Brownson, Adm'r, v. Lloyd Scanlan et al.

(Case No. 1327.)

1. Limitation of three years.— The statute of limitation of three years' possession under title or color of title cannot be made available by a defendant whose vendor, though connecting himself by regular chain of title with the sovereignty of the soil, had conveyed all his interest in the land to another before executing a deed to the defendant.

2. Limitation.— The owner of land is chargeable with notice of its locality and boundaries, and the meaning and locality of every settlement made upon it by another without his authority. One holding the superior title cannot set up his ignorance of the claim of right under which his land is occupied by an adverse claimant, in person or by agent, to defeat limitation.

3. Limitation of five years.— Where, under a plea of five years' limitation, possession is claimed under different titles, and the requisite term of occupancy has elapsed under neither, but the possession under one title must be tacked to that under another in order to make out the five years, a privity must be shown between the various titles under which possession is claimed, or its continuity will be broken, and the statute of five years will not avail the claimant.

4. Practice — Charge of court.— A court is not bound to strike out objectionable portions of a charge asked by counsel, and give what may remain, though it be correct. It may modify the charge or reject it altogether, and its rejection cannot be assigned as error.

5. Authentication — Acknowledgment.— See statement of case and opinion for form of acknowledgment of a deed in Louisiana in 1874, for Texas land, held sufficient.

Appeal from Waller. Tried below before the Hon. Wm. H. Burkhart.

Action of trespass to try title brought August 21, 1876, by J. M. Brownson, administrator of Robt. R. Barrow, deceased, against Lloyd Scanlan, Mrs. E. Spurlock and W. J. Rainwater, to recover the undivided two-thirds of a league of land, being the upper league of two leagues granted to Juan A. Padilla, on Brazos river, formerly in Austin county, now in Waller county. The defendants pleaded

not guilty, and limitation of three, five and ten years, and set up title in themselves to separate parcels of the land, to wit: Skannel's heirs to two thousand eight hundred and fifteen acres, Mrs. Spurlock to four hundred acres, and Rainwater to eight hundred acres. Mrs. Spurlock and Rainwater suggested improvements in good faith. All the defendants pleaded that they were innocent purchasers for value without notice. There was a verdict for the defendants generally.

The defendant Rainwater offered in evidence, without further proof of execution, a deed from J. F. Solleballas to Robt. P. Hunter for the eight hundred acres claimed by defendant Rainwater, and a deed from Hunter to James Richardson for same — said deeds having been filed among the papers of the cause, and due notice given. The deeds were both executed before a notary public in Louisiana, who attested the execution of the first named as follows:

"In testimony whereof the said parties hereto sign their names, together with me, notary, and the undersigned competent witnesses, and I affix hereto my official seal on this 31st day of March, 1874, the date and year above written.

"J. F. SOLLEBALLAS.

"ROBT. P. HUNTER.

[L. S.]                                   "L. V. MARYE,

"Notary Public.

"Witnesses: { J. C. MILLER.
             { JONAS ROSENTHAL."

The deed from Hunter to Richardson (who conveyed to defendant Rainwater) was attested in the same way.

In each case the official character of the notary was certified to by the clerk of the district court of Rapides parish, Louisiana, and the official character of the clerk was certified to by the judge of said court.

The plaintiff objected to the admission of these deeds because they were not duly authenticated for record nor duly recorded. The court overruled the objection and admitted the deeds, and plaintiff excepted.

The plaintiff showed a chain of conveyances from the original grantee, Juan A. Padilla, who was admitted to be the common source of title, to wit: from Padilla to Schloss and Castanee, from Schloss to Castanee for the interest of Schloss, from Castanee to Walker, and from Walker to Barrow. Mrs. Spurlock showed possession of the four hundred acres claimed by her since 1853. The evidence also showed a possession since same year, held by her

for Skannel, of a field upon the edge of the two thousand eight hundred and fifteen acres claimed by Skannel's heirs, which field was near Mrs. Spurlock's improvements, and was separated from them by a lane. Rainwater testified that he went upon the eight hundred acres he claims in 1865, under permission from Mrs. Spurlock, who then claimed to own the land, and he erected on it a storehouse and blacksmith shop. In 1870 Mrs. Spurlock conveyed to J. M. Solleballas. Rainwater tried to purchase the land from Solleballas, but did not, because he asked too much. He continued in possession of his improvements until 1872 or 1873, when he made an agreement with Solleballas to keep possession and pay the taxes. He held thus until he purchased from Richardson in 1874. Richardson had purchased from Hunter in April, 1874, and in March, 1874, Hunter had purchased from J. F. Solleballas (not the same Solleballas under whom Rainwater had held).

The plaintiff requested the court to give the following instructions:

." The jury are instructed that the plaintiff has shown title in himself to the undivided two-thirds of the upper league of the Juan A. Padilla two-league grant, and is entitled to a verdict for the same (except as to the four hundred acres claimed by Mrs. Spurlock), unless the other defendants have shown themselves entitled to the portions claimed by them, under the statute of limitations — as to which subject of limitations the jury are instructed as follows:

" 1. That no time is to be counted between the 28th day of January, 1861, and the 30th of March, 1870.

" 2. That if they find that the only possession or occupation of the two thousand eight hundred and fifteen acres claimed by the heirs of Lloyd Skannel was a field of fifty acres or less adjoining the four hundred acres claimed by Mrs. Spurlock, and cultivated by Mrs. Spurlock, who claimed to be the agent of Skannel, and to hold for him, and that this field was within a short distance of Mrs. Spurlock's residence upon the four hundred acres claimed and occupied by her, and was so situated that it appeared like a part of Mrs. Spurlock's plantation on said four hundred acres,— then the jury are instructed that it was not such a possession of the land claimed by said Skannel's heirs as will entitle them to hold the said land by the statute of limitations."

*Glass & Callender* and *Lackey*, for appellant Brownson, cited Smithwick *v.* Andrews, 24 Tex., 488; Whitehead *v.* Foley, 28 Tex., 1, and Norwood *v.* Boon, 21 Tex., 593.

*C. A. Harris* and *B. F. Elliott*, on the admissibility of the deed, cited Cowan *v.* Williams, 49 Tex., 380; Williams *v.* Conger, 49 Tex., 582; Watrous *v.* McGrew, 16 Tex., 506; Titus *v.* Kimbro, 8 Tex., 210; Wallace *v.* Wilcox, 27 Tex., 66.

On limitations, Fisk *v.* Wilson, 15 Tex., 435; Charle *v.* Saffold, 13 Tex., 112; Gaston & Thomas *v.* Dashiell, 55 Tex., 520; Gillespie *v.* Jones, 26 Tex., 346; Whitehead *v.* Foley, 28 Tex., 14.

WILLIE, CHIEF JUSTICE.— Unless the possession of the defendants Rainwater and Skannel bring them within the provisions of the five years' clause of the statute of limitation, the judgment rendered in their favor below is erroneous. They cannot claim the benefit of a three years' possession under title or color of title, because one of the deeds through which they must trace such title back to the sovereignty of the soil was executed by a party who had previously parted with all his interest in the land by deed to another, and that deed was on record at the time of his making the second conveyance. See Long *v.* Brenneman, decided at present term.

Were the appellees, or either of them, at the date of the commencement of this suit, in a condition to claim the benefit of the statute of five years?

And first as to Skannel. The deed under which he claimed was regular and duly recorded, and bore date some twenty-four years before the commencement of this suit. For more than five years of that period, exclusive of the time elapsing between the 28th of January, 1861, and the 30th of March, 1870, he had, through his agent, cultivated, used and enjoyed fifty acres of the tract claimed by him, and paid all the taxes accruing upon said tract with regularity. The only remaining fact necessary for him to prove, in order to obtain the full benefit of the statute of limitations, was that his possession had been openly and notoriously adverse.

The proof on this subject shows that Mrs. Spurlock, also a defendant below, who claimed four hundred acres of the land sued for, had a residence and farm upon the tract claimed by her, which improvements extended up to the boundary dividing her tract from Skannel's; that a lane separated her improvements from a fifty acre field on Skannel's land cultivated by Mrs. Spurlock and held by her for him as his agent, and that she had thus held and occupied these fifty acres and paid the taxes on the entire two thousand eight hundred and fifteen acres of Skannel, upon which this field was situated, continuously, from the time of their purchase by him. It is not dis-

puted but that such possession and occupancy would have been suf-
ficient, ordinarily, to entitle her principal to hold the land by
limitation.    It is contended, however, that the proximity of Mrs.
Spurlock's improvements would lead an ordinary observer to con-
clude that they, together with the fifty acre field, constituted but
one farm, possessed and cultivated under the same claim of right.

This might be so, and yet the party holding the superior title
would not be excused for ignorance of the particular claim of right
under which the premises were held by those in possession.    He is
not in the condition of an ordinary and casual observer, but must dil-
igently look to his own interests, know the boundaries of his own
land, and ascertain the extent, meaning and locality of any settle-
ment made within them without his authority.

Had Mrs. Spurlock's improvements been located at a considerable
distance from Skannel's fifty acre field, then, according to the reason-
ing of counsel for appellants, their clients would have been bound
to take notice that this field was upon Skannel's tract, and this
although she may have cultivated both the field and her own prem-
ises; for the most casual observer would not in such case have
concluded that they constituted but one farm.   Yet why should the
appellants be presumed to know that the fifty acre field was on the
Skannel tract, under these circumstances, and not under those actu-
ally existing?   The line of Mrs. Spurlock's land is just the same in
one case as in the other.   It runs immediately by the field occupied
by her for Skannel, and in order to determine upon which tract the
field is situated, we must still know the exact boundary between
the recorded claims of these two trespassers.   If appellants are not
expected to know the locality of such boundary, it must be held in
such case, also, that they might have been led into the error of sup-
posing that the field was across the line and on the land of the agent
instead of that of the principal.   It is urged that whilst plaintiffs
might be bound to know their own boundaries, they are not pre-
sumed to be acquainted with the lines that separate the respective
claims of trespassers upon their land.   We fail to see the force of
this idea.   Skannel's deed giving his boundaries was on record all
the time that the possession was held for him by Mrs. Spurlock.
One of the principal objects in requiring a deed, under which five
years' possession is claimed, to be recorded, is to enable persons ex-
amining the record to see what land is embraced in it.   Woodson v.
Allen, 54 Tex., 555.   If the true owner can refuse to obtain the in-
formation which the record is designed to give him, it is an ignorance
from which he can derive no benefit.   We think the possession of

Skannel, held for him by Mrs. Spurlock, was sufficiently open and notorious to entitle him to a judgment for the land claimed by him under the statute of limitations.

Next as to Rainwater's defenses. He took possession of the land in 1865, as tenant of Mrs. Spurlock, who then owned it under a recorded deed, and he continued to occupy it as her tenant down to April, 1870, paying taxes thereon. The statute of limitation commenced running in favor of such possession March 30, 1870. In April, 1870, Mrs. Spurlock sold to J. M. Solleballas, who recorded his deed, and the occupancy of Rainwater and the payment of taxes by him still continued, although the ownership of the land had changed. He set up no title as against Solleballas, but endeavored to purchase the land from him, and failing in this, made an agreement with the latter to keep possession and to pay taxes on the eight hundred acres as compensation for the use and occupation. He held possession in this way till 1874, and there can be no doubt but that from 30th March, 1870, down to 1874, his possession as tenant was of such a character as to entitle his landlords to the benefit of the statute. He was tenant by agreement for Mrs. Spurlock; at will for J. M. Solleballas till 1872; by agreement with him thereafter till 1874. His possession was in privity with each of these parties, in their name and stead and on their account. It was their possession in contemplation of law. They were chargeable with the responsibility of it and might avail themselves of its benefits. Whitehead v. Foley, 28 Tex., 1.

In 1874, whilst still in possession of the land as tenant, he purchased the title of Richardson and received a deed from him, still remaining on the land and paying the taxes accruing upon it, and continued to possess it under these circumstances down to the commencement of this suit in 1876. We find, then, that Rainwater occupied, used and enjoyed the eight hundred acres of land decreed to him below continuously from the 30th of March, 1870, when the statute of limitations began to run in his favor, down to the time when it was sought to eject him therefrom in 1876, a period of more than five years. We find further that he claimed the land during the whole of that time either as tenant for others or in his own right, and that his landlords and himself held deeds to the land, duly registered in the proper county, and that he paid taxes regularly for that period.

But there was no privity of title shown between J. M. Solleballas and Richardson; the continuity of the possession was therefore broken before the five years had elapsed, and the statute cannot

profit Rainwater as a defense to this suit, with the proof as it was made on the trial below.

Had the will of J. M. Solleballas been admitted in evidence, it would have shown that his title passed by devise to J. F. Solleballas; and the subsequent deeds from the latter to Hunter, and from Hunter to Richardson, and from Richardson to Rainwater, would have placed the interest of J. M. Solleballas in Rainwater. This would have created a privity between the titles of all these claimants of the land. Rainwater could have tacked his possession as owner under the deed from Richardson to his tenancy under the previous claimants, and thereby established an occupancy for five years, which would have defeated the plaintiff's action.

But the will of J. M. Solleballas was ruled out, and correctly, too, and one link in the chain that connected the title of J. M. Solleballas with Richardson was broken, and the latter became a stranger in title to the parties under whom Rainwater had previously held.

Where possession is claimed under different titles, and the requisite term of occupancy has elapsed under neither, but the possession under one title must be tacked to that under another, in order to make out the five years, a privity must be shown between the various titles under which possession is claimed, or its continuity will be broken, and the statute will not avail the claimant. Wheeler *v.* Moody, 9 Tex., 376; Mitchell *v.* Burdett, 22 Tex., 633; Winnie *v.* White, 5 Martin, 524.

As Rainwater's possession under deed to him cannot be tacked to his possession under J. M. Solleballas, he could not claim the benefit of the statute of five years, and the judgment below in his favor must be reversed as to him.

The action of the court in refusing to give the charge asked by plaintiffs' counsel, and which is assigned as error, is sustainable on several grounds. It is sufficient, however, to say that the first clause of the charge may have been correct, and yet the court was justified in refusing it, because it was connected with another which would have vitiated it. This first clause was not asked as a separate charge, but in connection with others, one of which was to the effect that such possession as was held by Skannel was not sufficient to give him the benefit of the statute of limitations. We have already shown that, under the facts of this case, that was not good law. The court was not bound to strike out the objectionable portion of the charge, and give the balance when thus connected. It had its option to modify or reject altogether, and having done the

latter, its action cannot be assigned as error.    Wells *v.* Barnett, 7 Tex., 584.

Moreover, from the whole charge as already given by the court, the jury could come to no other conclusion except that, unless the defendants established their plea of limitation, the plaintiffs were entitled to a verdict, and this was the effect of the instruction asked by plaintiffs' counsel.

As the cause will be remanded for a new trial as to Rainwater, it may as well be added that there was no error in the admission of the deeds from Solleballas to Hunter, and from Hunter to Richardson.    These deeds were executed in Louisiana, according to the customary form in that state, the grantee, and the officer taking his acknowledgment, both signing the instrument.    The acknowledgment is contained in the body of the deeds, instead of at the foot of it, being made simultaneous with their execution.    It contains all the requisites of the proof as required by our statute for admitting deeds to record.    The spirit of those laws was fulfilled, and their requisites almost literally complied with, and we see no reason for holding the record on such proof invalid.

For the reasons already stated, the judgment will be reversed and remanded for a new trial as to Rainwater, but affirmed as to the other defendant.

AFFIRMED IN PART, AND REVERSED AND REMANDED AS TO ONE APPELLANT.

[Opinion delivered April 13, 1883.]

Associate Justice STAYTON did not sit in this case.